[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, Slip Opinion No. 2024-Ohio-5519.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5519

THE STATE EX REL. AUTOZONE STORES, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, Slip Opinion No. 2024-Ohio-5519.]

*Workers' compensation—Temporary-total-disability compensation—R.C. 4123.56—Employee who had already been terminated for violation of employment policies before his shoulder surgery was not "unable to work" as "direct result of an impairment arising from an injury or occupational disease" under plain language of R.C. 4123.56(F) and thus was not entitled to receive temporary-total-disability compensation—Court of appeals' judgment reversed and writ granted.*

(No. 2023-0493—Submitted May 7, 2024—Decided November 26, 2024.)

APPEAL from the Court of Appeals for Franklin County,

No. 21AP-294, 2023-Ohio-633.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, DONNELLY, STEWART, and DETERS, JJ. FISCHER and BRUNNER, JJ., concurred in judgment only.

**Per Curiam.**

{¶ 1} This case is a direct appeal from an original action in mandamus filed by appellant, AutoZone Stores, Inc., in the Tenth District Court of Appeals. AutoZone requested a writ of mandamus ordering appellee Industrial Commission of Ohio to vacate its order that granted the request of appellee Jason W. Schomaker for temporary-total-disability ("TTD") compensation under R.C. 4123.56(A). The Tenth District denied the writ. AutoZone's appeal to this court presents an issue of first impression regarding the application of R.C. 4123.56(F), effective September 15, 2020. We reverse the Tenth District's judgment and issue a writ ordering the commission to vacate its order granting TTD compensation.

## I. BACKGROUND

### A. Factual History

{¶ 2} On June 15, 2020, while working as an assistant store manager for AutoZone, Schomaker injured his right shoulder in the course of doing normal job duties. His workers' compensation claim was allowed for various right arm and shoulder conditions. Two of Schomaker's treating physicians certified in MEDCO-14 Physician's Reports of Work Ability ("MEDCO-14 reports") that he could not "return to the full duties of [his] job held on the date of injury (former position of employment)" but that he could "return to available and appropriate work with restrictions" on specific dates provided. The parties agree that Schomaker worked light duty for AutoZone from the day of his injury until his employment was terminated.

{¶ 3} Schomaker had an altercation with a coworker on or around September 5, 2020, and AutoZone subsequently terminated his employment for

2

violating its employment policies. In this appeal, the parties do not dispute that the termination was unrelated to Schomaker's injury. Schomaker did not obtain other employment following his termination from AutoZone.

{¶ 4} On October 15, 2020 (after Schomaker had been terminated), one of Schomaker's treating physicians, Scott Albright, M.D., certified that Schomaker remained unable to return to the full duties of the job he had held on the date of his injury and that he was restricted to lifting no more than ten pounds. Dr. Albright also recommended that Schomaker undergo "biceps tenodesis" surgery. Schomaker's request for surgery was approved by AutoZone, a self-insuring employer, on or about October 29.

{¶ 5} On November 3, 2020, Schomaker consulted a surgeon, Anthony Checroun, M.D., who certified that Schomaker could not return to the full duties of the job he had held on the date of his injury but that he could continue to work with physical restrictions until his surgery. On November 16, 2020, Schomaker underwent shoulder surgery. Following the surgery, Dr. Checroun twice certified that Schomaker could not return to any work until he was reevaluated. On February 23, 2021, Dr. Checroun certified that Schomaker could immediately return to work with restrictions but that he could not return to the full duties of the job he had held on the date of his injury until an estimated date of April 19, 2021.

### B. Schomaker's Request for TTD Compensation

{¶ 6} On October 12, 2020, Schomaker submitted his first request for TTD compensation, to which AutoZone objected. His request stated that September 16, 2020, was the "last date worked due to the current period of work-related disability." He has since abandoned any argument that he was entitled to TTD compensation for any time before November 16, 2020, the date of his surgery. Pivotal to Schomaker's TTD claim is the commission's application of newly enacted R.C. 4123.56(F), which provides:

If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

{¶ 7} A hearing was held before a district hearing officer ("DHO") for the commission on December 16, 2020. The DHO found that R.C. 4123.56(F) "essentially directs an investigation into why any particular injured worker is off work." The DHO denied Schomaker's request for TTD compensation from September 17 through the date of the hearing, finding that Schomaker was unemployed beginning September 17 "for reasons wholly unrelated to the industrial injury in [his] claim" for TTD compensation and that Schomaker "[had] not re-entered the workforce since that time." Schomaker administratively appealed the DHO's decision.

{¶ 8} A staff hearing officer ("SHO") for the commission held a hearing on the appeal. The SHO vacated the DHO's order and granted Schomaker's request for TTD compensation from the date of his shoulder surgery—November 16, 2020—through the date of the hearing—March 25, 2021—and to continue upon submission of medical records certifying that Schomaker was "unable to return to and perform the duties of his former position of employment due to the allowed conditions." Applying R.C. 4123.56(F), the SHO found that Schomaker was

"unable to work or return to his former position of employment as a direct result of impairment arising from the allowed injury." The SHO relied "on the fact that at the time of the termination [Schomaker] was under restrictions due to the allowed conditions which prevented him from returning to and performing the full duties of his former position of employment" and on two of Dr. Checroun's MEDCO-14 reports following the surgery that "completely removed [Schomaker] from the workforce due to the allowed conditions." The SHO rejected AutoZone's argument that Schomaker's request should be denied because AutoZone had terminated Schomaker's employment on September 16, 2020. AutoZone administratively appealed the decision, but the commission refused further administrative review.

### C. AutoZone's Mandamus Action

{¶ 9} AutoZone filed a mandamus action in the Tenth District, seeking a writ that would compel the commission to vacate the SHO's order on the grounds that the order was not supported by sufficient evidence and that it was contrary to law because the SHO had misinterpreted and misapplied R.C. 4123.56(F) to Schomaker's request for TTD compensation. The Tenth District referred the matter to a magistrate, who recommended denying the writ because Schomaker's approved surgery had rendered him unable to work as the direct result of an impairment arising from a workplace injury under R.C. 4123.56(F). 2023-Ohio-633, ¶ 1 (10th Dist.). The magistrate reasoned that "immediately post-surgery, claimant was not working as a direct result of reasons related to the allowed injuries. At that point, his failure to work was not 'a direct result of reasons unrelated to the allowed injury.' . . . His reason for not working up until the date of surgery was irrelevant for purposes of determining his eligibility for wage-loss compensation after the surgery due to the allowed conditions." *Id.* at ¶ 63, quoting R.C. 4123.56(F).

{¶ 10} The Tenth District adopted the magistrate's recommendation, found that Schomaker was entitled to TTD compensation "for the period following the

5

approved surgery," and denied the request for a writ. *Id.* at ¶ 1, 37. The court found "the evidence sufficient to satisfy the first sentence of R.C. 4123.56(F), showing claimant was unable to work as the direct result of an impairment arising from his workplace injury for the period at issue, and concomitantly sufficient to negate the second sentence of R.C. 4123.56(F), showing the reasons claimant is not working are not 'unrelated' to the allowed injury." *Id.* at ¶ 36.

{¶ 11} AutoZone's appeal from the Tenth District's decision is now before this court as of right.

## II. STANDARD OF REVIEW

{¶ 12} In a direct appeal of a judgment in a mandamus action that originated in a court of appeals, we review the judgment as if the action had been originally filed in this court. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 164 (1967). To be entitled to a writ of mandamus, AutoZone must show by clear and convincing evidence that it has a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and that it has no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 2021-Ohio-3669, ¶ 10. An order awarding TTD compensation is not appealable under R.C. 4123.512(A) and must be challenged by a writ of mandamus. *See State ex rel. Tchankpa v. Indus. Comm.*, 2024-Ohio-3430, ¶ 15.

{¶ 13} A writ of mandamus may lie when there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties. *See State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 2008-Ohio-1593, ¶ 9. Ordinarily, "[w]here a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm.*, 1997-Ohio-181, ¶ 16. But "[a] mandatory writ may issue against the

Industrial Commission if the commission has incorrectly interpreted Ohio law." *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

## III.  ANALYSIS

### A.  R.C. 4123.56

{¶ 14} The purpose of Ohio's Workers' Compensation Act is to provide compensation to workers and their dependents for death, injuries, or occupational diseases occurring in the course of employment. *See* Ohio Const., art. II, § 35. As stated in R.C. 4123.54(A), injured employees are "entitled to receive the compensation for loss sustained on account of the injury, occupational disease, or death."

{¶ 15} R.C. 4123.56 applies to workers' compensation claims when the loss sustained by an injured employee is a loss of earnings during a temporary period of disability. *See State ex rel. Bunch v. Indus. Comm.*, 62 Ohio St.2d 423, 427 (1980), citing *State ex rel. Rubin v. Indus. Comm.*, 134 Ohio St. 12, 16 (1938) (construing G.C. 1465-79, an earlier version of the workers' compensation statute); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630, 634 (1982); *see also State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42, 44 (1987) (stating that the purpose of awarding TTD compensation is to compensate an injured employee for the loss of earnings incurred "while the injury heals"). Subsections (A), (B), and (F) of R.C. 4123.56 are relevant to the analysis of this case.

{¶ 16} R.C. 4123.56(A) provides a formula for TTD compensation based on a percentage of the employee's average weekly wage. However, R.C. 4123.56(A) also provides that payments for TTD compensation "shall not be made" for the following periods:

> [1] when any employee has returned to work, [2] when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position

of employment, [3] when work within the physical capabilities of the employee is made available by the employer or another employer, or [4] when the employee has reached the maximum medical improvement.

In *State ex rel. Ramirez v. Indus. Comm.*, this court concluded that an employee is entitled to TTD compensation when injured and unable to work until one of these enumerated alternatives occurs. *Ramirez* at 632 (applying former R.C. 4123.56(A)). In this context, "work" entails remuneration and refers to any substantially gainful employment. *See State ex rel. Parma Community Gen. Hosp. v. Jankowski*, 2002-Ohio-2336, ¶ 9-11; *see also State ex rel. Johnson v. Rawac Plating Co*., 61 Ohio St.3d 599, 600-601 (1991); *State ex rel. Nye v. Indus. Comm*., 22 Ohio St.3d 75, 78 (1986). In other words, an employee who has returned to remunerative work—even if other than the former position of employment—""is no longer suffering the loss of earnings for which [TTD] benefits are intended to compensate."" *Jankowski* at ¶ 11, quoting *Johnson* at 600-601, quoting *Nye* at 77.

{¶ 17} R.C. 4123.56(B), by contrast, provides a formula for temporary-disability compensation based on a percentage of the difference between an employee's average weekly wage and present earnings, "not to exceed the statewide average weekly wage," when an employee either (1) "suffers a wage loss as a result of returning to employment other than the employee's former position of employment due to an injury or occupational disease" or (2) "suffers a wage loss as a result of being unable to find employment consistent with the employee's disability resulting from the employee's injury or occupational disease." R.C. 4123.56(B)(1) and (2). Compensation under this division is classified as either "working wage loss" compensation under R.C. 4123.56(B)(1), or "non-working wage loss" compensation under R.C. 4123.56(B)(2). *See* Adm.Code 4125-1-01(A)(8) and (15).

{¶ 18} The Ohio General Assembly amended R.C. 4123.56, effective September 15, 2020, by adding paragraph (F). *See* 2020 Am.Sub.H.B. No. 81. The amendment "appl[ies] to claims pending on or arising after the effective date." 2020 Am.Sub.H.B. No. 81, § 3. Again, R.C. 4123.56(F) states:

> [1] If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. [2] If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. [3] It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

{¶ 19} The parties agree on appeal that R.C. 4123.56(F) applies to Schomaker's claim.

### B. The Doctrine of Voluntary Abandonment

{¶ 20} R.C. 4123.56(F) implicates our caselaw applying the voluntary-abandonment doctrine. The basis of this doctrine is that "[f]or purposes of compensability, a causal relationship must exist between the employee's industrial injury and the loss that the requested benefit is designed to compensate." *State ex rel. McCoy v. Dedicated Transport, Inc.*, 2002-Ohio-5305, ¶ 35. The voluntary-abandonment doctrine recognizes that a """complete abandonment of employment can, under certain circumstances, break the chain of cause and effect necessary to demonstrate that an injured worker actually is unemployed because of the injury,"""

*id.* at ¶ 36, quoting *State ex rel. Baker v. Indus. Comm.*, 2000-Ohio-168, ¶ 27, quoting *State ex rel. Baker v. Indus. Comm.*, No. 96APD10-1283 (10th Dist. Mar. 3, 1998) (Tyack, J., dissenting). As such, an injured employee who has been justifiably discharged for misconduct can be considered to have "voluntarily abandoned" his or her former position of employment so as to bar subsequent TTD compensation. *See id.* at ¶ 8, citing *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 1995-Ohio-153, ¶ 11.

## C. The Parties' Positions on Appeal

**{¶ 21}** AutoZone argues on appeal that the commission acted contrary to R.C. 4123.56(F) by awarding Schomaker TTD compensation when he was terminated from AutoZone for reasons unrelated to his injury and had not reentered the workforce when he applied for compensation. AutoZone's argument is based in part on its view that the reason for the termination of Schomaker's employment before he applied for TTD compensation is relevant to whether he was "not working . . . as the direct result of reasons unrelated to" his injury under the second sentence of R.C. 4123.56(F). AutoZone further contends that "[t]o supersede any previous judicial decision that applied the doctrine of voluntary abandonment," as R.C. 4123.56(F) now requires, "does not equate to the elimination of a required cause-and-effect relationship between the industrial injury and an actual loss of earnings." AutoZone does concede, however, that had Schomaker still been employed with AutoZone, or had he been reemployed elsewhere after his termination from AutoZone, he would have been entitled to TTD compensation after his surgery.

**{¶ 22}** Both Schomaker and the commission contend that R.C. 4123.56(F) "specifically supersedes the doctrine of voluntary abandonment and prohibits" any test that would require a similar kind of analysis. They also both argue that R.C. 4123.56(F) does not require an employee to be working to be eligible to receive TTD compensation. Schomaker further argues that R.C. 4123.56(F) does not require an analysis of an employee's reasons for not working in determining

whether the employee is eligible to receive TTD compensation. The commission focuses on the limited time frame for Schomaker's TTD claim, asserting that "[a]s of the November 16, 2020 surgery, there was a direct causal relationship between the inability to work and the allowed injury in the claim." *See also* 2023-Ohio-633 at ¶ 36 (10th Dist.).

{¶ 23} The meaning of a statute is a question of law that we review de novo. *Progressive Plastics, Inc. v. Testa*, 2012-Ohio-4759, ¶ 15. To discern the meaning of a statute, "we first consider the statutory language, reading all words and phrases in context and in accordance with the rules of grammar and common usage." *Gabbard v. Madison Local School Dist. Bd. of Edn.*, 2021-Ohio-2067, ¶ 13. We give effect to the words the General Assembly has chosen without adding to or deleting from the text. *Id.* "When a term is undefined, we give the term its 'plain and ordinary meaning.' " *Great Lakes Bar Control, Inc. v. Testa*, 2018-Ohio-5207, ¶ 8, quoting *Rhodes v. New Philadelphia*, 2011-Ohio-3279, ¶ 17. "In determining the plain and ordinary meaning of a word, courts may look to dictionary definitions of the word as well as the 'meaning that the word[ ] ha[s] acquired when . . . used in case law.' " (Brackets added in *Bertram.*) *State v. Bertram*, 2023-Ohio-1456, ¶ 13, quoting *Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision*, 2021-Ohio-2798, ¶ 21.

### D. R.C. 4123.56(F) Is Plain and Unambiguous

*1. First and Second Sentences: Causation Requirement*

{¶ 24} The first sentence of R.C. 4123.56(F) provides that an employee is entitled to receive compensation under R.C. 4123.56 if the employee's inability to work or wage loss is "the direct result of an impairment arising from an injury or occupational disease," provided that the employee is "otherwise qualified" to receive such compensation. The second sentence of R.C. 4123.56(F), on the other hand, provides that "[i]f an employee is not working or has suffered a wage loss as

the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under [R.C. 4123.56]."

### a. "Unable to Work" and "Not Working"

{¶ 25} The phrase "unable to work" as used in the first sentence of R.C. 4123.56(F), when given its plain meaning, refers to an inability to engage in any substantially gainful employment, and not just to the employee's inability to perform the full duties of his former position of employment. *See Jankowski*, 2002-Ohio-2336, at ¶ 9-11. Similarly, the phrase "not working" in the second sentence of R.C. 4123.56(F) refers to not engaging in any substantially gainful employment. *See id.*

### b. "As the Direct Result of"

{¶ 26} The phrase "as the direct result of" describes the causal relationship that must exist between the employee's injury and the employee's claimed inability to work, "not working," or wage loss. *See McCoy*, 2002-Ohio-5305, at ¶ 35. Although "direct" is not defined in the statute, its plain and ordinary meaning is: "[M]arked by absence of an intervening agency, instrumentality, or influence: immediate." *Webster's Third New International Dictionary* (2002). This language expresses a relationship of proximate cause, which is defined as a cause that "directly produces an event and without which the event would not have occurred," *Black's Law Dictionary* (12th Ed. 2024). This "direct result of" language applies to both TTD compensation under R.C. 4123.56(A) and wage-loss compensation under R.C. 4123.56(B).

{¶ 27} We have therefore conducted a proximate-cause analysis in workers' compensation cases. "Where a workman has sustained an accidental injury arising out of the employment, he may or may not be allowed compensation for subsequent harm or injurious effects, depending upon whether they are the direct or proximate consequences of the accidental injury, or whether the chain of causation has been broken by intervening or superseding causes." *Fox v. Indus. Comm.*, 162 Ohio St.

12

569, 575 (1955); *see also Aiken v. Indus. Comm.*, 143 Ohio St. 113, 117 (1944) (stating that "the proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred"). As these cases illustrate, an intervening event or condition not related to the employee's industrial injury can break the causal connection between the injury and the employee's claimed eligibility for compensation under R.C. 4123.56.

**{¶ 28}** We also have required a direct causal connection between an allowed injury and claimed wage loss under R.C. 4123.56(B). *See State ex rel. Jordan v. Indus. Comm.*, 2004-Ohio-2115, ¶ 9 ("Actual wage loss is, of course, inconsequential absent a causal relationship to claimant's allowed conditions."); *State ex rel. Tullis v. City Asphalt & Paving Co.*, 1997-Ohio-110, ¶ 10, quoting *State ex rel. Tullis v. City Asphalt & Paving Co.*, No. 94APD03-387 (10th Dist. Mar. 14, 1995) (agreeing with the court of appeals' finding that the meaning of "direct result," as used in a former version of Adm.Code 4121-3-32 implementing R.C. 4123.56, "'[did] not go so far as to extend to any result that may eventually occur down the line' "); *compare State ex rel. BF Goodrich Co., Specialty Chems. Div. v. Indus. Comm.*, 2016-Ohio-7988, ¶ 19 (the commission did not abuse its discretion in determining under R.C. 4123.56(B) that the employee's placement in a light-duty job due to post-injury restrictions directly resulted in a compensable wage loss from lack of overtime). And in *McCoy*, albeit a decision that applied the voluntary-abandonment doctrine, we stated that an employee "must show . . . that a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings" to qualify for TTD compensation. *McCoy*, 2002-Ohio-5305, at ¶ 35.

**{¶ 29}** Similarly, the first sentence of R.C. 4123.56(F) requires that to be entitled to receive compensation under R.C. 4123.56, an employee's wage loss or inability to work must be "the direct result of" an impairment arising from an

allowed injury. The second sentence of R.C. 4123.56(F) states the converse of that principle: if an employee's "not working" or "wage loss" is "the direct result of reasons unrelated to the allowed injury . . . the employee is not eligible to receive compensation" under R.C. 4123.56.

{¶ 30} Schomaker acknowledges on appeal that a proximate-cause analysis applies under R.C. 4123.56(F). He contends, though, that so long as his injury was a proximate cause of his inability to work, the mere presence of another causative factor for his not working during that period is immaterial, citing *State ex rel. Ignatious v. Indus. Comm.*, 2003-Ohio-3627, ¶ 33. But the language of R.C. 4123.56(F) contemplates that the employee is "unable to work" as "the direct result of" the claimant's injury (first sentence), or that the employee is "not working" as "the direct result of reasons unrelated to" that injury (second sentence). Both sentences must be considered.

{¶ 31} AutoZone, on the other hand, contends that use of the word "or" in the second sentence of R.C. 4123.56(F) means that the phrase "as the direct result of reasons unrelated to the allowed injury or occupational disease" does not modify the phrase "not working." Stated differently, AutoZone maintains that two circumstances exist in which an employee is not eligible for compensation: (1) the employee is not working, regardless of the reason, *or* (2) the employee has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease. Despite the structural similarity of the first and second sentences of R.C. 4123.56(F), AutoZone does not make this same argument regarding the first sentence, presumably because doing so would produce an absurd result—namely, an employee would be entitled to receive TTD compensation because he or she is "unable to work," regardless of whether the reason is directly related to an industrial injury or occupational disease.

{¶ 32} R.C. 4123.56(F) does not authorize an award of compensation to an employee merely because he or she is "unable to work," regardless of the reason.

14

Likewise, R.C. 4123.56(F) does not exempt an employee from receiving compensation merely because he or she "is not working," regardless of the reason. We conclude that the modifying phrase "as the direct result of reasons unrelated to the allowed injury or occupational disease" applies to both phrases on either side of the "or" in the second sentence of R.C. 4123.56(F). AutoZone's argument that the phrase "not working" stands on its own is incorrect.

### c. "Reasons Unrelated to the Allowed Injury"

{¶ 33} "Unrelated" is defined as "discrete, disjoined, separate." *Webster's Third New International Dictionary* (2002). Accordingly, "unrelated to" refers to the lack of a connection or association between two events. It follows, then, that the phrase "as the direct result of reasons unrelated to the allowed injury" in the second sentence of R.C. 4123.56(F) refers to the lack of a direct causal connection between the work-related injury and the employee's "not working" or "wage loss."

### d. "Otherwise Qualified"

{¶ 34} The phrase "otherwise qualified" as used in the first sentence of R.C. 4123.56(F) is not defined in the statute. The SHO did not determine whether Schomaker was "otherwise qualified," and the parties in this appeal dispute the meaning of the phrase. In its brief, AutoZone contends that "otherwise qualified" refers to "the overall workers' compensation statutory scheme" and that "[a] person is never qualified to receive compensation unless they are employed to begin with." As applied here, AutoZone argues that Schomaker was not "otherwise qualified" to receive TTD compensation because he was not employed at the time of his shoulder surgery, regardless of the reason. We decline to address AutoZone's argument, however, as it has been rendered moot in this case for reasons discussed below.[1]

---

1. AutoZone additionally argues that Schomaker was not qualified to receive TTD compensation because he was not "in the service of" any employer at the time of his application and therefore was not an "employee" as defined in R.C. 4123.01(A)(1)(b) (defining "employee" under the Workers'

## 2. *Third Sentence: Intent to Supersede the Voluntary-Abandonment Doctrine*

{¶ 35} The third sentence of R.C. 4123.56(F) states that "[i]t is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section." The voluntary-abandonment doctrine focused in part on whether an employee's decision to depart the workforce was "voluntary" and thereby had severed the causal connection between the employee's industrial injury and subsequent loss of earnings. *See, e.g.*, *McCoy*, 2002-Ohio-5305, at ¶ 38; *State ex rel. Ohio State Univ. v. Pratt*, 2022-Ohio-4111, ¶ 18.

{¶ 36} But the third sentence of R.C. 4123.56(F) does not sweep away all causation requirements for receiving compensation under R.C. 4123.56, particularly in light of division (F)'s first two sentences, which specify the required causal relationship between the injury and the claimed inability to work or wage loss. The third sentence instead declares the legislature's intent to "supersede"— or replace—the voluntary-abandonment decisions with the standard articulated in the first two sentences of R.C. 4123.56(F). *See Black's Law Dictionary* (12th Ed. 2024) (defining "supersede" as "[t]o annul, make void, or repeal by taking the place of"). Therefore, the inquiry is no longer whether an employee's departure from the workforce was "voluntary" or "involuntary," *see McCoy* at ¶ 20. Instead, under R.C. 4123.56(F), employees may be entitled to receive compensation if they demonstrate that they are "unable to work or suffer[ed] a wage loss as the direct result of an impairment arising from an injury or occupational disease." R.C. 4123.56(F). If, however, the evidence demonstrates that the employee is "not

---

Compensation Act in part as "[e]very person in the service of any person, firm, or private corporation, including any public service corporation"). But this specific issue was not raised in the court of appeals. *See* 2023-Ohio-633 at ¶ 20, fn. 3 (10th Dist.) (recognizing that the parties did not dispute that Schomaker was an "employee" for purposes of R.C. 4123.56). And it cannot be raised for the first time here. *See State ex rel. M.T.D. Prods., Inc. v. Stebbins*, 43 Ohio St.2d 114, 118 (1975).

working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease," compensation may be denied. R.C. 4123.56(F).

### 3. Summary

**{¶ 37}** We conclude that R.C. 4123.56(F) is plain and unambiguous and conveys a clear and definite meaning. Superseding the voluntary-abandonment decisions under the third sentence of R.C. 4123.56(F) does not eliminate the requirement of a causal relationship between the allowed injury and an actual loss of earnings. R.C. 4123.56(F) replaces the voluntary-abandonment decisions with a "direct result" requirement, clarifying that the claimed loss of wages or inability to work must be directly caused by an "impairment arising from an injury" and not by "reasons unrelated to the allowed injury."

### E. Application of R.C. 4123.56(F) to Schomaker's Claim

**{¶ 38}** Here, the SHO found that Schomaker was entitled to receive TTD compensation from the date of his shoulder surgery through the date of the hearing because, applying the first sentence of R.C. 4123.56(F), he was "unable to work as the direct result of an impairment arising from an injury." Dr. Checroun's MEDCO-14 reports submitted immediately post-surgery support the finding that Schomaker was "unable to work" as the direct result of his shoulder surgery between the date of his surgery (November 16, 2020) and the date Dr. Checroun certified that he could return to available work with appropriate restrictions (February 23, 2021).

**{¶ 39}** AutoZone argues, however, that the SHO's order should be vacated because, under the second sentence of R.C. 4123.56(F), Schomaker was "not working" as "the direct result of reasons unrelated to" his injury. *See* 2023-Ohio-633 at ¶ 30 (10th Dist.). We agree.

**{¶ 40}** There is no dispute that AutoZone terminated Schomaker following his September 5, 2020 altercation with a coworker for violation of its employment

policies. So, by the time Schomaker had his shoulder surgery on November 16, 2020, Schomaker was not working as "the direct result of reasons unrelated to" his injury. *See* R.C. 4123.56(F). Because Schomaker had already been terminated, his inability to work following his surgery was not the "direct result of an impairment arising from an injury or occupational disease." *See id.* Thus, under the plain language of R.C. 4123.56(F), Schomaker was not entitled to receive TTD compensation from the date of his shoulder surgery through the date of the hearing. The Tenth District erred in concluding otherwise.

{¶ 41} Not only did the Tenth District and the SHO fail to give independent effect to the causation language of the second sentence of R.C. 4123.56(F), which calls for an analysis of whether the employee is "not working . . . as the direct result of reasons unrelated to the allowed injury," but they also overlooked the historical purpose of temporary-disability compensation. Whether awarded under R.C. 4123.56(A) or (B), the purpose of temporary-disability payments is to compensate for an employee's loss of earnings while the allowed injury heals. *See also Ashcraft*, 34 Ohio St.3d at 44. The formulas for determining the award amount use the employee's "weekly wage" and/or "present earnings." *See* R.C. 4123.56(A) through (B); *see also* R.C. 4123.56(E) (providing a formula for determining compensation when the employee's full weekly wage has not been determined at the time payments are to commence). When an injured employee has not been working as the direct result of reasons unrelated to the allowed injury, there is no compensable loss of earnings, *see* R.C. 4123.56(F)—even if an allowed injury gives rise to a later disability. That a person must be employed to be eligible to receive compensation for loss of earnings is, as AutoZone correctly points out, a fundamental tenet of TTD compensation that predates and transcends the voluntary-abandonment doctrine.

{¶ 42} Because Schomaker's inability to work was direct result of his termination, the SHO's order granting him TTD compensation must be vacated.

For this reason, AutoZone's argument that Schomaker is not "otherwise qualified" to receive TTD compensation is moot.

### IV.  CONCLUSION

{¶ 43} We reverse the Tenth District's judgment and issue the requested writ of mandamus ordering the commission to vacate the SHO's order awarding Schomaker TTD compensation.

Judgment reversed
and writ granted.

_____

Crabbe Brown & James, L.L.P., and John C. Albert, for appellant.

Dave Yost, Attorney General, and Denise A. Corea, Assistant Attorney General, for appellee Industrial Commission of Ohio.

Casper, Casper & Casper, L.L.C., and Kolet Buenavides, for appellee Jason W. Schomaker.

Jon Goodman Law, L.L.C., and Jon H. Goodman, urging affirmance for amicus curiae, Ohio Association for Justice.

Philip J. Fulton Law Office, Philip J. Fulton, and Chelsea F. Rubin, urging affirmance for amicus curiae, Ohio Association of Claimants' Counsel.

_____