[Cite as *State ex rel. Columbus Schools, Columbus Bd. of Edn. v. Mizer*, 2025-Ohio-2234.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Columbus Schools, Columbus Board of Education, | : | |
| | : | |
| Relator, | | |
| v. | : | No. 23AP-111 |
| Julie A. Brookbank Mizer et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on June 26, 2025

**On brief:** *Scott Scriven LLP*, and *Karla S. Soards*, for relator.

**On brief:** *Nager, Romaine & Schneiberg, LPA, Catherine Lietzke*, and *C. Bradley Howenstein*, for respondent Julie Brookbank-Mizer.

**On brief:** *Dave Yost*, Attorney General, and *David M. Canale*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

MENTEL, J.

{¶ 1} Relator, Columbus Schools, Columbus Board of Education, brought this original action in mandamus seeking to vacate the final order of respondent, Industrial Commission of Ohio, that had granted the request of respondent, Julie Brookbank-Mizer, for reconsideration and awarded her temporary total disability ("TTD") compensation. Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. After reviewing the stipulated record and the arguments of the parties, the magistrate has concluded that Columbus Schools has not demonstrated a

clear legal right to the relief it seeks and therefore recommends that we deny the request for a writ of mandamus.

{¶ 2}   As explained more fully in the magistrate's decision, Ms. Brookbank-Mizer is a speech therapist employed by Columbus Schools. Like many public school employees, she elected to receive "stretch pay," allowing her to be paid over 12 months for the wages earned during the 9-month period of the school year. She suffered an injury in the course of her employment on August 30, 2021, and was granted TTD compensation that started on September 1, 2021. The average wage used to determine her TTD benefit was based on the bi-weekly amount of her stretch pay that she normally received year round.

{¶ 3}   During the 2021 school year, Columbus Schools paid Ms. Brookbank-Mizer no wages while she received TTD compensation. She requested continuing TTD compensation on May 23, 2022, based on a doctor's certification. Columbus Schools requested a hearing on the issue in a letter stating that she was "a nine-month employee who does not work during the summer months" whose "last day of scheduled work" in 2022 was June 3, and whose "first day to work for the 2022-2023 school year" was August 22. (Stipulation Evid. at Ex. 46.) At the hearing, Columbus Schools moved to have Ms. Brookbank-Mizer's TTD compensation terminated. A district hearing officer granted the motion, concluding that Ms. Brookbank-Mizer was eligible to receive TTD compensation only until June 3, 2022 because, as she was "not scheduled to work during the summer months," there were "no earnings to replace" from the summer months. (Stipulation Evid. Ex. 52.)

{¶ 4}   Initially a staff hearing officer upheld the order, but it was ultimately vacated by the commission after Ms. Brookbank-Mizer requested reconsideration. The commission reinstated her TTD compensation and Columbus Schools sought a writ of mandamus in this court. The magistrate has recommended that we deny the writ. Columbus School has raised three objections to the magistrate's decision, first stating:

> The Magistrate erred in finding that the pertinent issue is whether Claimant can receive temporary total disability compensation during the summer recess when she was to be receiving stretch pay for those summer months for work performed during the 9-month school year.

(June 20, 2024 Obj. at 6.)

{¶ 5} In its first objection, Columbus Schools argues that in contrast to the magistrate's framing, the "pertinent issue" is whether Ms. Brookbank-Mizer "sustained a loss of earnings and the reason for the loss of earnings." (Objs. at 18.) In its view, the application of R.C. 4123.56(F) precludes her from receiving TTD. That provision states:

> If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

{¶ 6} According to Columbus Schools, Ms. Brookbank-Mizer did not suffer a loss of wages in the summer of 2022 as a direct result of her work injury. Rather, she did not receive wages during that period because of "her own personal choice[]" to not work during the summer recess, which she had also not worked during the previous five years. (Objs. at 20.)

{¶ 7} This argument fails for several reasons. First, it ignores the disjunctive language in the first sentence of R.C. 4123.56(F). As the Supreme Court of Ohio has interpreted this language, "the modifying phrase 'as the direct result of reasons unrelated to the allowed injury or occupational disease' applies to both phrases on either side of the 'or' in the second sentence of R.C. 4123.56(F)." *State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, 2024-Ohio-5519, ¶ 32. Thus, an employee is entitled to receive TTD compensation if she "is unable to work *or* suffers a wage loss as the direct result of an impairment arising from an injury," and it is undisputed that Ms. Brookbank-Mizer's injury was the direct reason for her inability to work. (Emphasis added.) R.C. 4123.56(F). The commission specifically "relie[d] upon the MEDCO-14 Physician's Reports of Work Ability from Brian Scheetz, D.C." attesting that she was unable to work because of her injury, including the specific report certifying her inability to work from May 25, 2022 until August 25, 2022. (Jan. 21, 2023 Order, Stipulation Evid. at Ex. 64; May 25, 2022 MEDCO-14 Physician Reports of Work Ability, Stipulation Evid. at Ex. 42.)

{¶ 8}   For the same reason, the second sentence of R.C. 4123.56(F) does not apply. "If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section."  R.C. 4123.56(F).  As stated, the commission found that her reason for not working was directly attributable to her injury.  Thus, Columbus Schools' argument that Ms. Brookbank-Mizer "suffered a loss of earnings in the summer of 2022 because she was not employed in the summer due to her own personal choices" is not supported by any evidence the commission relied upon.  (Objs. at 20.)  It was Columbus Schools' decision to attempt to terminate the stretch pay that she was to receive during the summer months for work that she would have already completed but for her injury that caused her wage loss, not any choice made by Ms. Brookbank-Mizer.  We specifically reject this reasoning as well because it suggests applying the doctrine of voluntary abandonment, which "focused in part on whether an employee's decision to depart the workforce was 'voluntary' and thereby had severed the causal connection between the employee's industrial injury and subsequent loss of earnings."  *AutoZone Stores, Inc.* at ¶ 35.  Application of the doctrine would directly violate the General Assembly's mandate that R.C. 4123.56(F) supersede any judicial decision applying it.  The first objection is overruled.

{¶ 9}   In the second objection, Columbus Schools asserts:

> The Magistrate erred by not finding that the pertinent issue is Claimant's intent to work in the summer of 2022 as required by *State ex rel. Crim v. Ohio Bur. of Workers' Comp.*, 92 Ohio St.3d 481, 2001-Ohio-1268, 751 N.E.2d 990.

{¶ 10}   *Crim* concerned a swimming instructor employed during the school year by a county agency who elected to receive stretch pay.  *State ex rel. Crim v. Ohio Bur. of Workers' Comp.*, 92 Ohio St.3d 481 (2001).  In addition, she typically worked a second summer job at the YMCA, but, after an injury, "was unable to perform her summer job during her period of disability."  *Id.* at 482.  The Supreme Court of Ohio identified "two issues" the case presented:

> The first issue is whether a teacher who contracts to teach during a school year is considered to have voluntarily abandoned her or his employment at the end of an academic calendar year for the purposes of temporary total disability compensation. The second issue is whether a teacher, who is

employed for nine months of the year and elects to receive prorated compensation over twelve months, is entitled to temporary total disability compensation for summer employment that she or he is unable to perform because of the allowed conditions of a claim.

*Id.*

{¶ 11} Columbus Schools argues that the magistrate erred by not examining Ms. Brookbank-Mizer's "intent to work over the summer recess," asserting that *Crim* requires such an analysis. (Objs. at 20.) The question of the claimant's intent in *Crim* was relevant only to its discussion of the voluntary abandonment doctrine. *Crim* at 483-84 (recognizing that "an employee/employer agreement for a specific term may be evidence of that employee's intent to voluntarily terminate employment" but holding that claimant had not voluntarily abandoned her primary job). As discussed, R.C. 4123.56(F) precludes the application of the voluntary abandonment doctrine as discussed in *Crim* to this case.

{¶ 12} Furthermore, the syllabus holding expressed in *Crim*, which does not concern voluntary abandonment, actually supports the magistrate's position: "A teacher who is employed for nine months during the academic calendar year, but elects to receive earnings over a prorated twelve-month period, is not, during a summer break, precluded from receiving temporary total disability compensation for a work-related injury on the sole basis that prorated earnings were received over the summer break." *Crim* at syllabus. Here, as well, Ms. Brookbank-Mizer is not precluded from receiving TTD because her prorated earnings continued to be paid over the summer months. The second objection is overruled.

{¶ 13} In the final objection, Columbus Schools asserts:

The Magistrate erred by relying upon *State ex rel. Glenn v. Indus. Comm. of Ohio*, 122 Ohio St.3d 483, 2009-Ohio-3627, 912 N.E.2d 592, as this analysis fails to address the proximate cause of Claimant's period of disability.

{¶ 14} Columbus Schools argues that *Glenn* is distinguishable because the court did not "analyze the intent of the claimant" in that case, and because the real issue is "the proximate cause of the period of disability," as required by R.C. 4123.56(F). (Objs. at 26.) As discussed in the first objection, the commission ultimately concluded that Ms. Brookbank-Mizer's injury was the direct cause of her inability to work, and that conclusion satisfies the causal element of R.C. 4123.56(F). Furthermore, the question of intent that

Columbus Schools raises is an attempt to invoke the voluntary abandonment doctrine once again. We may not do so, for the reasons discussed.

{¶ 15} In *Glenn*, a teacher who normally received stretch pay was denied TTD compensation during two summer breaks after her injury, but it was not clear from the evidence in the record whether she received stretch pay during those summers. Thus, the Supreme Court of Ohio issued a limited writ to have the case returned to the commission to determine whether she was actually paid by the school district during those summers:

> If Glenn received her wages from Columbus Public Schools during the summers of 2005 and 2006, she would be ineligible for TTD compensation. . . . But if she did not, she should be eligible for TTD compensation based on the fact that she lost earnings -- the wages earned during the school year, the payment of which was deferred until summer.

*Glenn* at ¶ 7.

{¶ 16} Neither the commission nor the magistrate erred when relying upon *Glenn*, which directly addresses Ms. Brookbank-Mizer's situation. The third objection is overruled.

{¶ 17} "To be entitled to the extraordinary remedy of mandamus, a relator must establish a clear legal right to the relief requested, a clear legal duty on the part of the bureau to provide the relief, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 2016-Ohio-5011, ¶ 18, citing *State ex rel. GMC v. Indus. Comm.*, 2008-Ohio-1593, ¶ 9. We agree with the magistrate that Columbus Schools has shown no right to the relief requested, and that some evidence supported the commission's order granting Ms. Brookbank-Mizer's request for reconsideration and reinstating her TTD compensation. Accordingly, we adopt the decision of the magistrate in full and deny the petition for a writ of mandamus.

*Writ of mandamus denied.*

DORRIAN and EDELSTEIN, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Columbus Schools,<br>Columbus Board of Education, | : | |
| | : | |
| Relator, | | |
| v. | : | No. 23AP-111 |
| Julie A. Brookbank-Mizer et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 6, 2024

*Scott Scriven LLP*, and *Karla S. Soards*, for relator.

*Nager, Romaine & Schneiberg, LPA, Catherine Lietzke*, and *C. Bradley Howenstein*, for respondent Julie Brookbank-Mizer.

*Dave Yost*, Attorney General, and *David M. Canale*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 18} Relator, Columbus Schools, Columbus Board of Education ("employer"), has filed this original action requesting that this court issue a writ of mandamus against respondents Julie Brookbank-Mizer ("employee") and the Industrial Commission of Ohio ("commission"), ordering the commission to vacate its order granting claimant's request for reconsideration and awarding temporary total disability ("TTD") compensation.

Findings of Fact:

{¶ 19} 1. On August 30, 2021, claimant sustained an injury in the course of and arising out of her employment with the employer. Her workers' compensation claim was allowed for the following conditions: concussion without loss of consciousness; sprain of ligaments of the cervical spine; and sprain of ligaments of the thoracic spine.

{¶ 20} 2. As a school speech therapist for the employer, claimant elected to be paid her wages over a 12-month period ("stretch pay"), although she only worked for the employer during the 9-month school year ("school year"). Claimant testified before the commission that, during her 23 years of employment with the employer, she worked approximately 18 summer sessions for the employer during the summer recess; summer session was not fulltime employment; the employer asked speech therapists in the spring of each school year if they wanted to work during summer session; summer session employment is voluntary and is parttime employment; summer session work involves working less than 30 hours per week and sometimes involved only working 70 hours for the entire summer session; if a speech therapist volunteered to work during summer session, the employer would have to approve pay for the employee to work summer session; the speech therapist working summer session also was required to document work hours to support the hourly pay during summer school session; and claimant did not work summer session in 2021 prior to her work injury.

{¶ 21} 3. Claimant was granted TTD compensation, commencing September 1, 2021. Claimant's full weekly wage ("FWW") and average weekly wage ("AWW") were determined based on 26 bi-weekly pay periods for the 52 weeks prior to the injury.

{¶ 22} 4. Following the injury, the employer paid no wages to claimant, including during the 2022 summer recess from June 3 to August 22, 2022.

{¶ 23} 5. Claimant continued to receive TTD compensation through May 25, 2022.

{¶ 24} 6. On May 23, 2022, Brian Scheetz, D.C., completed a MEDCO-14, which certified TTD compensation through August 25, 2022.

{¶ 25} 7. Also on May 23, 2022, claimant completed a C-84 request for TTD compensation, in which she claimed she had a job to return to with the employer, was unable to return to her job due to her work injury, and had not worked in any capacity since the commencement of her work injury.

{¶ 26} 8. The employer requested a hearing on claimant's C-84 request and submitted a letter from Penny Roth, the Workers' Compensation Coordinator for the employer, which stated that claimant is a 9-month employee who does not work during the summer months, and her last day of work for 2021-22 will be June 3, 2022, and her first day of work for 2022-23 will be August 22, 2022.

{¶ 27} 9. On June 13, 2022, Dr. Scheetz continued to certify TTD compensation through November 25, 2022.

{¶ 28} 10. On July 8, 2022, a hearing was held before a district hearing officer ("DHO"), and in a July 19, 2022, order, the DHO found the following: (1) the employer's C-86 motion is granted; (2) TTD compensation shall be paid through June 3, 2022, the last date claimant was scheduled to work before the summer recess, and terminated thereafter; (3) TTD compensation is meant to replace earnings that the injured worker would have received had he or she not been injured; (4) claimant is not eligible for TTD compensation starting June 4, 2022, because there are no earnings to replace; (5) claimant testified that she did not work last summer and has provided no documentation or testimony that she intended to work from June 4, to August 21, 2022; (6) stretch pay represents pay for work previously performed and that claimant elected to receive over 12 months rather than 9 months but is not earnings for work performed during the summer months; and (7) TTD compensation is not appropriate pursuant to R.C. 4123.56(F) because claimant is not working during the summer months for reasons unrelated to the allowed injury; i.e., claimant is not working because she was not scheduled to work over the summer months. Claimant appealed.

{¶ 29} 11. On October 4, 2022, a hearing was held before a staff hearing officer ("SHO"), and in an October 6, 2022, order, the SHO affirmed the decision of the DHO, finding the following: (1) summer school work was voluntary, was at the discretion of the employee, and was not fulltime employment; (2) claimant is not entitled to TTD compensation because she had no loss of earnings or wages from June 4, 2022 (the day after the end of the regular school year), as claimant received her normal wages during this period; and (3) there is no record of medical treatment for the allowed physical conditions after the June 13, 2022, office visit with Dr. Scheetz until the August 10, 2022, office visit with Dr. Scheetz for the allowed conditions. Claimant appealed.

{¶ 30} 12. On October 26, 2022, the commission refused claimant's appeal. Claimant filed a request for reconsideration.

{¶ 31} 13. On December 15, 2022, the commission held a hearing, and in a January 21, 2023, order, the commission vacated the SHO's order, finding the following: (1) the SHO's order contains a clear mistake of fact and clear mistake of law; (2) the SHO erred in terminating TTD compensation effective June 3, 2022; (3) the SHO erroneously found claimant was barred from receiving TTD compensation pursuant to R.C. 4123.56(F); (4) in denying the employer's request to terminate TTD compensation, the commission relies upon *State ex rel. Glenn v. Indus. Comm. of Ohio*, 122 Ohio St.3d 483, 2009-Ohio-3627, which the court held that if a teacher receiving stretch pay did not receive those wages over the summer, then the teacher would be eligible for compensation based on the fact she lost earnings, that being the wages earned during the school year, the payment of which was deferred until summer; and (5) based upon *Glenn* and the absence of any evidence claimant received wages, i.e., stretch pay, during the pertinent period, claimant is awarded TTD compensation from the date last paid through December 15, 2022, the date of the hearing.

{¶ 32} 14. On February 17, 2023, the employer filed a petition for writ of mandamus, requesting that this court order the commission to vacate its order granting claimant's request for reconsideration and awarding TTD compensation.

Conclusions of Law:

{¶ 33} The magistrate recommends that this court deny the employer's petition for writ of mandamus.

{¶ 34} The Supreme Court of Ohio has set forth three requirements that must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 35} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 78-79 (1986). But when the record contains some evidence to support the commission's

findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987).

{¶ 36} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost when a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum medical improvement. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 37} R.C. 4123.56, which was amended by H.B. No. 81, effective September 15, 2020, modified the prior version of R.C. 4123.56 by adding the following entirely new language pertaining to voluntary abandonment:

> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F).

{¶ 38} Amended R.C. 4123.56(F) applies to claims pending on or arising after the effective date, which is September 15, 2020. *State ex rel. Autozone Stores, Inc. v. Indus. Comm. of Ohio*, 10th Dist. No. 21AP-294, 2023-Ohio-633, fn. 1, citing *State ex rel. Ohio State Univ. v. Pratt*, 169 Ohio St.3d 527, 2022-Ohio-4111, ¶ 10, fn. 2, and *State ex rel. Cleveland Metro. School Dist. v. Indus. Comm.*, 10th Dist. No. 20AP-139, 2022-Ohio-2150, ¶ 47-48. Thus, amended R.C. 4123.56(F) applies to the present case.

{¶ 39} Here, we address the employer's arguments together. The employer first argues that the commission abused its discretion when it failed to address the fact that

claimant had no loss of wages from June 4, through August 21, 2022, as claimant was not scheduled to work that summer, had no intention of working during the summer, and had no history of working in the summer for many years. Citing R.C. 4123.56(F), the employer asserts that claimant has not suffered a loss of earnings from June 4, through August 21, 2022, as a direct result of her work injury. Thus, the employer asserts, claimant has no wages to replace.

{¶ 40} The employer also argues that the commission abused its discretion by not addressing claimant's intent to work in the summer of 2022, as required by *State ex rel. Crim v. Ohio Bur. of Workers' Comp.*, 92 Ohio St.3d 481 (2001). The employer asserts that, since the decision in *Crim*, the focus on whether TTD compensation is payable to a school employee during a summer break when the employee was not scheduled to work has been based on evidence of intent to work a second job during the summer break. The employer contends that the concept of stretch pay sometimes confuses the issue, but *Crim* makes clear that the fact that an employee elects to be paid over a prorated 12-month period is of no import. Instead, the appropriate inquiry under *Crim* is whether there is proof of intent to work a summer job and the loss of wages from that summer job due to the allowed injury. However, the employer points out, claimant has not submitted any evidence of an intent to work during the summer months, and she did not work the summers of 2017 through 2021.

{¶ 41} The employer also argues that the commission abused its discretion when it relied on *Glenn*. The employer claims that *Glenn* is inapplicable to the present case because: (1) the court in *Glenn* issued a limited writ and remanded the matter back to the commission for further proceedings, the result of which is not known; (2) the court in *Glenn* did not analyze the intent of the claimant as required by *Crim*; (3) *Glenn* was decided prior to the enactment of R.C. 4123.56(F), which clarifies that the focus for TTD compensation is a consideration of the proximate cause of the period of disability and a determination as to the cause for the requested period of disability; and (4) the court in *Glenn* did not consider the *Crim* decision's citation to *State ex rel. Smith v. Indus. Comm.*, 10th Dist. No. 97APD04-457 (Mar. 17, 1998), which held that the receipt of prorated wages over the summer was not the same as earned wages over the summer, as it was payment for labor performed over the preceding school year. Again, points out the

employer, it is not relevant to the payment of TTD compensation if the teacher receives stretch pay over the summer or if the teacher receives his or her salary over a shortened 9-month period; the correct inquiry is whether there are lost earnings over the summer months.

{¶ 42} However, the employer's focus on claimant's summer employment in these arguments is misguided. Claimant's TTD compensation for summer employment and whether she intended to work over the summer recess is not the pertinent issue in this case. The issue here is whether claimant can receive TTD compensation during the summer recess when she was to be receiving stretch pay for those summer months for work performed during the 9-month school year. The commission's order makes this clear. In vacating the SHO's decision, the commission did not address claimant's summer employment and does not do so for a sound reason: It is not the relevant inquiry. The relevant inquiry is whether claimant suffered a wage loss during the three months of the summer recess as a direct cause of her industrial injury. In finding claimant did, the commission based its decision on the logic that, because there was no evidence that claimant was receiving her stretch-pay salary during the summer recess, but she was entitled to stretch pay during this period as compensation for wages she lost during the school year due to her injury, she was eligible for TTD compensation for the summer recess. Consistent with the first sentence in R.C. 4123.56(F), claimant's wage loss during the summer recess would be a direct result of her work injury, as those deferred summer wages were to be paid for work that would have been performed during the school year but for her injury. Because there was no evidence claimant actually received these deferred wages during the summer recess, she was entitled to TTD compensation to compensate her for these wages lost due to her injury.

{¶ 43} In reaching this decision, the commission relied upon *Glenn*. In *Glenn*, Glenn was a teacher who was not required to report to work over summer break and elected to receive stretch pay. The commission awarded Glenn TTD compensation for her inability to work during the school year but denied her compensation over the 2005 and 2006 summer breaks based upon *Crim*. Glenn filed a complaint in mandamus in this court, and we denied the writ based on *Crim*. Glenn appealed. The Supreme Court of Ohio found the commission's reliance on *Crim* to be flawed. The court found that the teacher

in *Crim* did not apply for TTD compensation based on her inability to work at her teaching job but applied for TTD compensation based on her inability to work at a second job during the summer. The court in *Crim* set forth a two-part test to determine when a teacher is eligible to receive TTD compensation for a second job even though she is receiving prorated salary from her primary job. The court in *Glenn* explained that *Crim* stands for nothing more than this and was therefore not relevant to the issue in *Glenn*. The court in *Glenn* then pointed out that Glenn received TTD compensation, not wages, during the 2005 and 2006 school years, and she did not receive TTD compensation during the summers. The court found that if Glenn had received her wages from the school system during the summers of 2005 and 2006, she would be ineligible for TTD compensation, but if she did not, she should be eligible for TTD compensation based on the fact that she lost earnings—the wages earned during the school year, the payment of which was deferred until summer. Because the record in *Glenn* lacked payroll records or other evidence that would clarify whether payment of Glenn's normal wages resumed over the summers in question, the court ordered the commission to determine whether Glenn received wages from the school during the 2005 and 2006 summers. The court concluded that, because Glenn suffered an injury that rendered her unable to teach, she is entitled to either her salary or TTD compensation and cannot be denied both merely because she elected to prorate her salary over 12 months.

{¶ 44} The analysis in *Glenn* is applicable to the present case. Like the teacher in *Glenn*, claimant was not required to report to work over summer break and elected to receive stretch pay. As pointed out in *Glenn*, the teacher in *Crim* did not apply for TTD compensation based on her inability to work at her teaching job but applied for TTD compensation based on her inability to work at a second job during the summer, and the court in *Crim* set forth a two-part test to determine when a teacher is eligible to receive TTD compensation for a second job even though she is receiving prorated salary from her primary job. Because TTD compensation based upon claimant's inability to work a summer job is not at issue in the present case, but, instead, claimant's inability to work her teaching job during the school year, *Crim* is not relevant here, just as it was not relevant in *Glenn*. Similar to *Glenn*, claimant here received TTD compensation, not wages, during the 2021-22 school year and received no wages during the 2022 summer

recess. As explained in *Glenn*, if claimant here had received her wages from her employer during the summer of 2022, she would be ineligible for TTD compensation, but because she did not, she is eligible for TTD compensation based on the fact that she lost earnings—the wages earned during the school year, the payment of which was deferred until summer. Therefore, consistent with *Glenn*, because claimant in the preset case suffered an injury that rendered her unable to teach during the 2021-22 school year, and she elected to prorate her 2021-22 salary over 12 months but only received TTD compensation for the 9-month school year, she is entitled to either her salary or TTD compensation for the three months of summer recess. There is no evidence that claimant received her salary for the three months of summer recess; thus, she is entitled to TTD compensation for that period.

{¶ 45} The employer's arguments as to why *Glenn* does not apply here are without merit. The court in *Glenn* specifically explained that it did not analyze the intent of the claimant as in *Crim* because the teacher in *Crim* did not apply for TTD compensation based on her inability to work at her teaching job but applied for TTD compensation based on her inability to work at a second job during the summer, which was not at issue in *Glenn*. The court in *Glenn* further explained that *Crim* stands for nothing more than determining when a teacher is eligible to receive TTD compensation for a second job even though she is receiving her prorated salary from her primary job. Furthermore, amended R.C. 4123.56(F) does not affect the application of *Glenn* to the present case, as the proximate cause of the lost wages during the summer recess is the industrial injury that prevented claimant from working during the school year. Thus, consistent with R.C. 4123.56(F), claimant was unable to work for the 12-month period of her stretch pay and suffered a wage loss during this entire period as the direct result of an impairment arising from her occupational injury. Because she received TTD compensation for only the 9-month school year and did not receive any compensation from her salary during the 3-month summer recess, she was entitled to receive TTD compensation for the 3-month summer recess for this wage loss. Finally, with regard to *Crim's* citation to *Smith* for the proposition that the receipt of a prorated wage is not the equivalent of "earning" a wage or "receiving" salary compensation during the summer break, this statement does not impact the present case. Whether claimant's 12 months of prorated salary as a teacher is

considered entirely "earned" during the 9-month school year or partially "earned" during the 3-month summer recess is irrelevant to the present analysis. What is important here is that claimant lost 12 months of stretch pay as a result of her industrial injury, and she received only 9 months of TTD compensation. As the commission found, claimant was entitled to receive either her salary during the 3-month summer recess or TTD compensation. Because there was no evidence she received her salary, she is entitled to TTD compensation.

{¶ 46} Accordingly, it is the magistrate's decision that this court should deny the employer's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.