[Cite as *State ex rel. Camp v. Ferrellgas Inc.*, 2025-Ohio-464.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Adam Camp, | : | |
| Relator, | : | |
| | : | No. 23AP-75 |
| v. | : | (REGULAR CALENDAR) |
| Ferrellgas Inc. et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on February 13, 2025

**On brief:** *Barron Peck Bennie & Schlemmer*, and *Mark L. Newman*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Administrator, Ohio Bureau of Workers' Compensation.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

BOGGS, J.

{¶ 1} Relator, Adam Camp ("claimant"), has filed this original action against respondents, Ferrellgas Inc. ("employer") and the Industrial Commission of Ohio ("commission"), requesting a writ of mandamus ordering the commission to vacate its order denying claimant's request for temporary total disability ("TTD") compensation from November 2, 2020 through May 2, 2022, and ordering the commission to issue an order granting him the requested TTD compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends that this court grant the requested writ.

{¶ 3} The commission has filed an objection to the magistrate's decision. Particularly, the commission maintains that the magistrate erred by recommending a full writ of mandamus instead of recommending a limited writ with a remand to the commission for the commission to analyze whether claimant was not working as a direct result of the psychological conditions allowed in his workers' compensation claim. We must therefore independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Pursuant to Civ.R. 53, we may reject the magistrate's decision in whole or in part, and we are not required to defer to a magistrate's factual findings or legal conclusions if we do not agree with them. *Azarova v. Schmitt*, 1st Dist. No. C-060090, 2007-Ohio-653, ¶ 32, citing *Sweeney v. Sweeney*, 10th Dist. No. 06AP-251, 2006-Ohio-6988, ¶ 14-15.

## I.   FACTS AND PROCEDURAL HISTORY

{¶ 4} The commission has not objected to the magistrate's findings of facts, and having independently reviewed the record, we adopt those findings as our own.

{¶ 5} Claimant sustained an injury on June 13, 2017, in the course of and arising out of his employment with employer. A workers' compensation claim was initially allowed for the following physical conditions: bilateral inguinal hernia, without obstruction or gangrene, not recurrent; post op seroma inguinal area; and mononeuropathy ilioinguinal left lower extremity. Claimant underwent bilateral inguinal hernia surgery on July 10, 2017, and he received post-operative care from Gururau Sudarshan, M.D. Claimant was awarded TTD compensation beginning June 14, 2017.

{¶ 6} In MEDCO-14 physician's reports of work ability dated May 16 and 30, 2019, Dr. Sudarshan found claimant could work 30 hours per week for 6 hours per day, and that he was capable of lifting and carrying up to 20 pounds occasionally and of lifting up to 10 pounds frequently, with additional limitations regarding bending, twisting, squatting, and climbing. Dr. Sudarshan also found claimant was a candidate for vocational rehabilitation.

{¶ 7} On August 7, 2019, Paul T. Hogya, M.D., issued a report in which he found claimant had reached maximum medical improvement ("MMI") for the physical conditions allowed in his claim. Dr. Hogya stated claimant was capable of performing light duty work with restrictions.

{¶ 8} Employer thereafter filed a C-86 motion to terminate claimant's TTD compensation, which a district hearing officer ("DHO") granted on October 11, 2019, based on a finding that claimant had reached MMI with respect to his allowed physical conditions. Claimant's TTD compensation was terminated as of October 8, 2019.

{¶ 9} Claimant did not return to the workforce, and there is no evidence in the record that he sought vocational rehabilitation services.

{¶ 10} On November 12, 2020, approximately 16 months after his treating physician found that he could return to work with restrictions and approximately 13 months after his TTD was terminated based on a finding of MMI, claimant filed a C-86 motion requesting that his claim be amended to include the additional conditions of unspecified depressive disorder and generalized anxiety disorder, based on a November 9, 2020 report by Jennifer Stoeckel, Ph.D., who found that claimant suffered from those conditions as a result of his workplace accident. A DHO granted claimant's motion on October 15, 2021.

{¶ 11} Claimant received treatment for his psychological conditions from Dr. Stoeckel from December 18, 2020 through April 22, 2022. Dr. Stoeckel completed MEDCO-14 forms, in which she certified that claimant was unable to work due to his allowed psychological conditions of unspecified depressive disorder and generalized anxiety disorder from November 2, 2020 through April 6, 2022.

{¶ 12} On January 18, 2022, claimant requested TTD compensation based on his newly allowed psychological conditions. A DHO issued an order granting claimant's request for TTD compensation from November 2, 2020 through March 23, 2022, and continuing with submission of supporting medical proof. The DHO found that claimant was out of work and suffering a wage loss as a direct result of the allowed psychological conditions in his claim.

{¶ 13} On appeal, however, a staff hearing officer ("SHO") issued an order vacating the DHO's order and denying claimant's request for TTD compensation. The SHO focused on the fact that claimant was not working prior to November 2, 2020, despite having been determined to have reached MMI with respect to his allowed physical claims and despite a determination that claimant was capable of light duty work with restrictions in 2019. The SHO found, in part, that claimant was not eligible for TTD compensation because he was not working in any capacity prior to November 2, 2020, and his lack of work was due to his

failure to return to the workforce or to attempt to do so after having been found to have reached MMI for his allowed physical conditions in 2019. The SHO stated the claim file contained insufficient evidence that claimant applied to participate in vocational rehabilitation or sought work within the restrictions from Dr. Sudarshan prior to November 1, 2020, and contained insufficient evidence that claimant's failure to do so was due to the allowed conditions in his claim. Based on the lack of evidence that claimant looked for work within the restrictions from Dr. Sudarshan or applied to participate in vocational rehabilitation prior to November 2, 2020, the SHO found that claimant's loss of wages as of that date was due to his failure to return to the workforce.

{¶ 14} After the commission refused an appeal of the SHO's order and denied claimant's request for reconsideration, claimant filed this action for a writ of mandamus.

## II. REQUIREMENTS FOR MANDAMUS

{¶ 15} To be entitled to a writ of mandamus, a relator must demonstrate by clear and convincing evidence that he has a clear legal right to the relief sought, that the commission has a clear legal duty to provide that relief, and that he lacks an adequate remedy in the ordinary course of the law. *See State ex rel. Poneris v. Indus. Comm.*, 10th Dist. No. 05AP-111, 2005-Ohio-6208, ¶ 11, citing *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). Generally, a clear legal right exists when the relator establishes that the commission abused its discretion by entering an order that is not supported by "some evidence" in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 78-79 (1986). " 'When an order [of the commission] is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order.' " *State ex rel. Waste Mgt. of Ohio v. Indus. Comm.*, ___ Ohio St.3d ___, 2022-Ohio-4581, ¶ 14, quoting *State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 148 Ohio St.3d 34, 2016-Ohio-5011, ¶ 18. When a stipulated record presents a question of law, such as the meaning of a statute, however, we review that question de novo. *State ex rel. Peregrine Health Servs. of Columbus, L.L.C. v. Sears, Dir., Ohio Dept. of Medicaid*, 10th Dist. No. 18AP-16, 2020-Ohio-3426, ¶ 23.

## III. DISCUSSION

### A. R.C. 4123.56

{¶ 16} R.C. 4123.56, which governs TTD compensation, "applies to workers' compensation claims when the loss sustained by an injured employee is a loss of earnings

during a temporary period of disability." *State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, ___ Ohio St.3d ___, 2024-Ohio-5519, ¶ 15. TTD compensation will be paid until: (1) the claimant has returned to work, (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment, (3) work within the physical capabilities of the claimant is made available by the employer or another employer, or (4) the claimant has reached MMI. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630, 632 (1982) (applying former R.C. 4123.56(A)).

{¶ 17} Effective September 15, 2020, the General Assembly amended R.C. 4123.56 by adding R.C. 4123.56(F). *See* 2020 Am.Sub.H.B. No. 81. R.C. 4123.56(F) provides:

> If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F) applies to claims that were pending on or that arose after its September 15, 2020 effective date. The commission does not contest that R.C. 4123.56(F) applies to this case.

**B. The Magistrate's Decision**

{¶ 18} The magistrate relies on this court's discussion of R.C. 4123.56(F) in *State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, 10th Dist. No. 21AP-294, 2023-Ohio-633. The claimant in *AutoZone* suffered a workplace shoulder injury in June 2020, and his workers' compensation claim was allowed for multiple conditions. After placing the claimant on light duty work, the employer terminated the claimant's employment in September 2020, for violation of company policy following an argument between the claimant and a coworker. The claimant thereafter underwent an approved shoulder surgery, and a physician issued MEDCO-14 reports stating that the claimant could not work until further evaluation. An SHO granted the claimant's request for TTD compensation beginning from the date of his shoulder surgery. Because the claimant had been under restrictions due to

his allowed conditions when he was terminated and was then completely removed from the workforce after his approved surgery, the SHO concluded that the claimant was unable to work as a direct result of an impairment arising from his allowed injury, beginning from the date of his surgery. *Id.* at ¶ 5.

{¶ 19} The employer in *AutoZone* filed an action in this court for a writ of mandamus ordering the commission to vacate its order granting the claimant's request for TTD compensation, which this court denied. Reviewing the magistrate's decision in *AutoZone*, we concluded that the magistrate did not err in determining that, following his shoulder surgery, the claimant was unable to work as the direct result of his workplace injury under the first sentence of R.C. 4123.56(F). We noted with approval the magistrate's determination that R.C. 4123.56(F) "plainly calls for a consideration of the period when TTD was granted without resorting to an analysis akin to the voluntary abandonment of the workforce doctrine that backtracks to the period before TTD is granted." *Id.* at ¶ 18. Further, we rejected the employer's reliance on cases applying the voluntary abandonment doctrine to challenge the magistrate's statement that the reasons the claimant was not working prior to the date of his surgery were irrelevant. We stated, "R.C. 4123.56(F) requires us to review only whether the claimant in this case was unable to work as the direct result of an impairment arising from an injury or occupational disease to support the grant of TTD for the period specified." *Id.* at ¶ 34.

{¶ 20} Following our precedent in *AutoZone*, the magistrate here concluded there was uncontroverted evidence that claimant was unable to work as a direct result of an impairment—his allowed psychological conditions—arising from his workplace accident, beginning November 2, 2020. With respect to the second sentence of R.C. 4123.56(F), the magistrate stated:

> Even if it were assumed that claimant was not working prior to his period of psychological disability based on personal choice or other reasons, once claimant became disabled due to his allowed workplace injury, the reason he was not working at that point could no longer be directly attributable to reasons unrelated to the workplace injury. Instead, claimant's not working, at that point, was directly attributable to his allowed psychological conditions[.]

(Mag.'s Decision at 11.) Accordingly, the magistrate recommended that this court grant claimant's petition for a writ of mandamus.

**C. The Supreme Court of Ohio Reverses this Court's Judgment in** *AutoZone*

{¶ 21} Although this court's judgment in *AutoZone* remained good law both when the magistrate issued his decision in this case and when the commission filed its objection, the Supreme Court of Ohio has since reversed that judgment, based in part on a determination that this court erred in its reading of R.C. 4123.56(F). *See AutoZone*, 2024-Ohio-5519. In *AutoZone*, the Supreme Court addressed R.C. 4123.56(F) for the first time, and it summarized its reading of the statute as follows:

> Superseding the voluntary-abandonment decisions under the third sentence of R.C. 4123.56(F) does not eliminate the requirement of a causal relationship between the allowed injury and an actual loss of earnings. R.C. 4123.56(F) replaces the voluntary-abandonment decisions with a "direct result" requirement, clarifying that the claimed loss of wages or inability to work must be directly caused by an "impairment arising from an injury" and not by "reasons unrelated to the allowed injury."

*Id.* at ¶ 37, quoting R.C. 4123.56(F).

{¶ 22} Applying R.C. 4123.56(F) in *AutoZone*, the Supreme Court acknowledged that the post-surgery MEDCO-14 reports submitted by the claimant's doctor supported the finding under the first sentence of R.C. 4123.56(F) that the claimant was unable to work as a direct result of his shoulder surgery, starting on the date of his surgery. *Id.* at ¶ 38. But the Supreme Court also agreed with the employer's argument that, under the second sentence of R.C. 4123.56(F), the claimant "was 'not working' as 'the direct result of reasons unrelated to' his injury." *Id.* at ¶ 39, quoting R.C. 4123.56(F). In its application of the second sentence of R.C. 4123.56(F), the Supreme Court looked backwards at why the claimant was not working *prior to* the alleged disability for which he sought TTD compensation. The Supreme Court stated there was no dispute that the employer had terminated the claimant for a violation of its employment policies, "[s]o, by the time [the claimant] had his shoulder surgery * * *, [he] was not working as 'the direct result of reasons unrelated to' his injury. *See* R.C. 4123.56(F)." *Id.* at ¶ 40. It held:

> Because [claimant] had already been terminated, his inability to work following his surgery was not the "direct result of an impairment arising from an injury or occupational disease." *See id.* Thus, under the plain language of R.C. 4123.56(F),

> [claimant] was not entitled to receive TTD compensation from
> the date of his shoulder surgery through the date of the hearing.

*Id.* The Supreme Court faulted this court for "fail[ing] to give independent effect to the causation language of the second sentence of R.C. 4123.56(F)." *Id.* at ¶ 41.

{¶ 23} The Supreme Court also faulted this court for "overlook[ing] the historical purpose of temporary-disability compensation * * * to compensate for an employee's loss of earnings while the allowed injury heals." *Id.* It stated, "When an injured employee has not been working as the direct result of reasons unrelated to the allowed injury, there is no compensable loss of earnings, *see* R.C. 4123.56(F)—even if an allowed injury gives rise to a later disability." *Id.*

### D. Application of the Supreme Court of Ohio's *AutoZone* Opinion Here

{¶ 24} Claimant's workers' compensation claim was amended on October 15, 2021, to add allowances for unspecified depressive disorder and generalized anxiety disorder. Claimant received treatment from Dr. Stoeckel for those psychological conditions beginning November 2, 2020, and Dr. Stoeckel certified claimant's inability to work because of those conditions from November 2, 2020 through April 6, 2020. Thus, the medical evidence supports a finding under the first sentence of R.C. 4123.56(F) that claimant was unable to work as a direct result of an allowed condition arising from his workplace injury, as of November 2, 2020.

{¶ 25} With respect to the second sentence of R.C. 4123.56(F), the magistrate held, based on this court's decision in *AutoZone*, "the reason claimant was not working up until the date of psychological disability is irrelevant for purposes of determining his eligibility for wage-loss compensation." (Mag.'s Decision at 10-11.) That holding, however, conflicts with the Supreme Court's opinion in *AutoZone*. In applying R.C. 4123.56(F) in *AutoZone*, the Supreme Court expressly considered why the claimant was not working as of the time of his shoulder surgery. And it concluded that, because the claimant had been terminated for violating company policy, the claimant "was not working 'as the direct result of reasons unrelated to' his injury," and was therefore not entitled to TTD compensation. *AutoZone*, 2024-Ohio-5519, at ¶ 40, quoting R.C. 4123.56(F).

{¶ 26} Here, in May 2019, Dr. Sudarshan found claimant could work 30 hours per week for 6 hours per day and was capable of lifting and carrying up to 20 pounds occasionally and lifting up to 10 pounds frequently, with additional limitations regarding

bending, twisting, squatting, and climbing. Dr. Sudarshan also found claimant was a candidate for vocational rehabilitation. In August 2019, Dr. Hogya determined claimant could perform light duty work with restrictions. In October 2019, the commission terminated claimant's TTD compensation based on a finding that claimant had reached MMI for his allowed physical conditions—the only conditions then allowed as part of his workers' compensation claim. Yet, as of November 2, 2020, from which date Dr. Stoeckel found claimant unable to work as a result of his psychological conditions, claimant had not returned to any work, and there was no evidence that he had sought work or sought or participated in vocational rehabilitation.

{¶ 27} Whereas the claimant in *AutoZone* was not working prior to his shoulder surgery because he had been fired, the reasons claimant here was not working prior to November 2, 2020 are less clear. But the SHO did find that claimant not working in any capacity prior to November 2, 2020, was due to his failure to return to the workforce or to attempt to return to the workforce after having been found to have reached MMI for his allowed physical conditions. The SHO found the claim file contained insufficient evidence to establish a causal link between claimant's failure to participate in vocational rehabilitation and to look for or perform work within the restrictions stated by Dr. Sudarshan and the claimant's allowed conditions. The May 2019 MEDCO-14 forms from Dr. Sudarshan and the August 2019 report from Dr. Hogya support the SHO's finding that claimant was not working prior to November 2, 2020, as the direct result of reasons unrelated to his industrial injury. As a result, under the Supreme Court's *AutoZone*, claimant suffered no compensable loss of earnings when his psychological conditions rendered him unable to work thereafter. *See AutoZone*, 2024-Ohio-5519, at ¶ 41.

### E. The Commission's Objection is Moot

{¶ 28} In its objection to the magistrate's decision, the commission does not challenge the magistrate's reading of R.C. 4123.56(F) in accordance with our now-reversed decision in *AutoZone*. Rather, the commission contends that instead of determining that claimant was unable to work due to his allowed psychological conditions as of November 2, 2020, this court should return the matter to the commission for further proceedings. Because we conclude, based on the Supreme Court's opinion in *AutoZone*, that claimant is not entitled to TTD compensation because he was "not working * * * as the direct result of

reasons unrelated to the allowed injury," the commission's objection is moot. *AutoZone* at ¶ 41.

## IV.  CONCLUSION

{¶ 29}  Having conducted an independent review of the magistrate's decision and the commission's objection, we find the magistrate has properly determined the pertinent facts, and we adopt the magistrate's findings of fact as our own.  But in light of the Supreme Court of Ohio's superseding opinion in *AutoZone*, which reversed this court's precedent regarding R.C. 4123.56(F), we do not adopt the magistrate's conclusions of law.  Instead, based on the Supreme Court of Ohio's opinion in *AutoZone* and for the reasons stated herein, we deny claimant's petition for a writ of mandamus.

*Objection moot*;
*writ of mandamus denied.*

JAMISON, P.J., and LELAND, J., concur.

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State ex rel. Adam Camp,                    :

      Relator,                           :

v.                                          No. 23AP-75

                                         :

Ferrellgas Inc. et al.,                     (REGULAR CALENDAR)

                                         :

      Respondents.                       :

                                         :

---

## MAGISTRATE'S DECISION

### Rendered on June 4, 2024

---

*Barron Peck Bennie & Schlemmer*, and *Mark L. Newman*, for relator.

*Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Administrator, Ohio Bureau of Workers' Compensation.

---

### IN MANDAMUS

{¶ 30} Relator, Adam Camp ("claimant"), has filed this original action requesting that this court issue a writ of mandamus against respondents Ferrellgas Inc. ("employer") and Industrial Commission of Ohio ("commission"), ordering the commission to vacate its order that denied his request for temporary total disability ("TTD") compensation from November 2, 2020, through May 2, 2022, and to issue an order granting TTD compensation.

Findings of Fact:

{¶ 31} 1. On June 13, 2017, claimant sustained an injury in the course of and arising out of his employment with employer while lifting a propane cylinder. His workers' compensation claim was allowed for the following conditions: bilateral inguinal hernia, without obstruction or gangrene, not recurrent; post op seroma inguinal area; mononeuropathy ilioinguinal left lower extremity; unspecified depressive disorder; and generalized anxiety disorder.

{¶ 32} 2. On July 10, 2017, claimant underwent bilateral inguinal hernia surgery. He received post-surgery care from Gururau Sudarshan, M.D.

{¶ 33} 3. Claimant was awarded TTD compensation starting June 14, 2017.

{¶ 34} 4. In two MEDCO-14 physician's reports of work ability forms dated May 16 and 30, 2019, Dr. Sudarshan found claimant could work 30 hours per week for six hours per day and was capable of lifting and carrying up to 20 pounds occasionally and lifting up to 10 pounds frequently with additional limitations regarding bending, twisting, squatting, and climbing. Dr. Sudarshan also found claimant was a candidate for vocational rehabilitation. However, claimant did not return to any work.

{¶ 35} 5. On August 7, 2019, Paul T. Hogya, M.D., issued a report in which he found that claimant had reached maximum medical improvement ("MMI") for the allowed physical conditions in the claim. Dr. Hogya found that claimant was capable of performing light-duty-level work with restrictions when considering the allowed physical conditions in the claim.

{¶ 36} 6. On August 13, 2019, the employer filed a C-86 motion to terminate TTD compensation based upon the finding of MMI.

{¶ 37} 7. The C-86 motion was heard before a district hearing officer ("DHO"), and in an October 11, 2019, order, the DHO found claimant had reached MMI and terminated TTD compensation as of October 8, 2019.

{¶ 38} 8. In a November 9, 2020, report, Jennifer Stoeckel, Ph.D., found claimant suffered from unspecified depressive disorder and generalized anxiety disorder as a result of the industrial accident.

{¶ 39} 9. On November 12, 2020, claimant filed a motion requesting that the claim be amended to include the additional conditions of unspecified depressive disorder and generalized anxiety disorder.

{¶ 40} 10. On October 15, 2021, a DHO granted an allowance for unspecified depressive disorder and generalized anxiety disorder.

{¶ 41} 11. Claimant received treatment from Dr. Stoeckel for his psychological conditions from December 18, 2020, through April 22, 2022.

{¶ 42} 12. Dr. Stoeckel completed MEDCO-14 forms certifying claimant's inability to work due to the allowed psychological conditions from November 2, 2020, through April 6, 2022.

{¶ 43} 13. On January 18, 2022, claimant requested TTD compensation for the newly allowed psychological conditions.

{¶ 44} 14. A hearing on claimant's C-84 request was held before a DHO, and on March 26, 2022, the DHO granted TTD compensation, finding the following: (1) TTD compensation is granted; (2) R.C. 4123.56(F) is applicable to the requested period of TTD compensation; (3) claimant is out of work and suffering a wage loss as a direct result of the psychological conditions allowed in the claim; (4) the reason claimant is suffering the wage loss and not working is related to the allowed injury; (5) TTD compensation is awarded from November 2, 2020, to March 23, 2022, and to continue with the submission of proof; and (6) the allowed conditions in the claim prevent claimant from returning to his position of employment. The commission appealed.

{¶ 45} 15. On May 7, 2022, a staff hearing officer ("SHO") issued an order vacating the DHO's order, finding the following: (1) claimant is not eligible for TTD compensation from November 2, 2020, through May 2, 2022, because claimant was not working in any capacity prior to November 2, 2022, and claimant's lack of work was due to his failure to return to the workforce or attempt to do so after being found to have reached MMI as of October 9, 2019; (2) Dr. Hogya found in his August 7, 2019, report that claimant was capable of light-duty work based upon restrictions emanating from the allowed conditions; (3) Dr. Hogya's opinion that claimant was capable of performing light-duty work was supported by Dr. Sudarshan's May 16 and May 30, 2019, reports, in which the physician stated that claimant could work 30 hours per week for 6 hours per day and was

capable of lifting and carrying up to 20 pounds occasionally and lifting up to 10 pounds frequently with additional limitations regarding bending, twisting, squatting, and climbing; (4) Dr. Sudarshan opined that claimant was a candidate for vocational rehabilitation; (5) the claim file contains insufficient evidence that claimant applied to participate in vocational rehabilitation or attempted to look for work within the restrictions from Dr. Sudarshan prior to November 1, 2020; (6) the claim file contains insufficient evidence to establish that claimant's inability to participate in vocational rehabilitation, to look for or perform work within the restrictions from Dr. Sudarshan were due to the allowed conditions from October 9, 2019, through November 1, 2020; (7) based upon claimant's inability to try to work or find work within the restrictions from Dr. Sudarshan prior to November 2, 2020, claimant's loss of wages as of November 2, 2020, were due to his failure to return to the workforce; and (8) claimant's request for TTD compensation from November 2, 2020, through May 2, 2022, is denied. Claimant appealed.

**{¶ 46}** 16. On May 26, 2022, the commission refused the appeal of the SHO order.

**{¶ 47}** 17. Claimant filed a request for reconsideration, which the commission denied.

**{¶ 48}** 18. On February 1, 2023, claimant filed a petition for writ of mandamus.

Conclusions of Law:

**{¶ 49}** The magistrate recommends that this court grant claimant's request for writ of mandamus.

**{¶ 50}** The Supreme Court of Ohio has set forth three requirements that must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

**{¶ 51}** A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 78-79 (1986). But when the record contains some evidence to support the commission's

findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987).

{¶ 52} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost when a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum medical improvement. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 53} R.C. 4123.56, which was amended by H.B. No. 81, effective September 15, 2020, modified the prior version of R.C. 4123.56 by adding the following entirely new language pertaining to voluntary abandonment:

> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F).

{¶ 54} Initially, the magistrate notes that amended R.C. 4123.56(F) applies to claims pending on or arising after the effective date, which is September 15, 2020. *State ex rel. Autozone Stores, Inc. v. Indus. Comm. of Ohio*, 10th Dist. No. 21AP-294, 2023-Ohio-633, fn. 1, citing *State ex rel. Ohio State Univ. v. Pratt*, 169 Ohio St.3d 527, 2022-Ohio-4111, ¶ 10, fn. 2, and *State ex rel. Cleveland Metro. School Dist. v. Indus. Comm.*, 10th Dist. No. 20AP-139, 2022-Ohio-2150, ¶ 47-48. Thus, amended R.C. 4123.56(F) applies to the present case.

{¶ 55} Claimant here relies upon this court's holding in *Autozone* to argue that R.C. 4123.56 does not require that a claimant must be working prior to the requested period of TTD compensation. Claimant asserts the fact that a claimant is not working is not dispositive; rather, an inquiry is required into whether the claimant is unable to work as the direct result of an impairment arising from an injury or occupational disease.

{¶ 56} In *AutoZone*, the claimant was working as an assistant store manager for the employer when he sustained an injury. A workers' compensation claim was allowed, and the claimant was placed on light duty. The claimant was then involved in an argument with another employee and was terminated. The claimant filed a request for TTD compensation, which was denied by the employer. The claimant then underwent an approved shoulder surgery, and a physician issued MEDCO-14 forms indicating the claimant could not work until further evaluation. The DHO denied the claimant's request for TTD compensation after examining the details of the claimant's termination. After the claimant appealed, the SHO granted the claimant's request for TTD compensation, but only for the period between his surgery and the hearing with the SHO. In doing so, the SHO rejected the employer's argument that TTD compensation should be denied since the claimant had been terminated. Instead, the SHO determined, based on the fact the claimant was under restrictions due to the allowed conditions at the time of the termination and was completely removed from the workforce after the subsequent approved surgery (as evidenced by the MEDCO-14 forms), pursuant to R.C. 4123.56(F), the claimant was unable to work as a direct result of an impairment arising from the allowed injury from the date of the allowed surgery through the date of the hearing. In the employer's writ of mandamus action, the magistrate denied a writ, and this court denied the employer's subsequent objections.

{¶ 57} In *AutoZone*, with regard to the first section of R.C. 4123.56(F), the employer argued the claimant was unable to work as a direct result of his prior job termination, not his impairment arising from the subsequent allowed surgery. This court addressed "direct result," as used in both the first and second sentences in R.C. 4123.56(F), as follows:

> Reading the ordinary meaning of "direct" within the context
> of the statute as a whole, R.C. 4123.56(F) requires a claimant's
> inability to work to stem immediately from an impairment

> arising from an injury or occupational disease. We decline to extrapolate an additional requirement in R.C. 4123.56(F) that a claimant prove he or she is unable to work only due to an impairment arising from an injury or occupational disease. Such a reading would in essence add words to the statute, which courts are not permitted to do. [*Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, ¶ 13]. Furthermore, the second sentence of R.C. 4123.56(F) shows the legislature contemplated that multiple "reasons" may contribute to a claimant being unable to work, and only when those reasons are "unrelated" to the workplace injury would TTD be inappropriate. R.C. 4123.56(F). To instead adopt the employer's position would, in essence, turn the court's gaze back to those facts surrounding why the claimant left the workforce preceding the period of TTD compensation—effectively resurrecting the voluntary abandonment analysis expressly superseded by the legislature.

*AutoZone* at ¶ 22. Thus, this court in *AutoZone* concluded the magistrate did not err in determining claimant was unable to work as a "direct" result of his workplace injury under R.C. 4123.56(F).

{¶ 58} In the present case, claimant argues that it is clear that he was unable to work from November 2, 2020, to May 2, 2022, as a direct result of the newly allowed conditions of unspecified depressive disorder and generalized anxiety disorder. Claimant points out that he began treating with Dr. Stoeckel for these conditions on November 2, 2020, and the doctor completed MEDCO-14 forms certifying claimant's inability to work due to these conditions from November 2, 2020, through April 6, 2022. Claimant contends that the SHO misapplied R.C. 4123.56(F) by finding he was not entitled to TTD compensation for this period because he was not working in any capacity prior to November 2, 2020, and his lack of work was due to his failure to return to the workforce or attempt to do so after he was found to have reached MMI for the allowed physical conditions on October 8, 2019. However, claimant asserts, he was unable to work for this period as a direct result of an impairment from the allowed psychological conditions, and the reason he was not working prior to November 2, 2020, is irrelevant for purposes of determining his eligibility for TTD compensation after Dr. Stoeckel began certifying his inability to work due to the newly allowed conditions. Claimant asserts that for the commission to consider the facts surrounding why he was not working prior to the

requested period of TTD compensation is effectively applying the voluntary abandonment doctrine, which was superseded by R.C. 4123.56(F).

{¶ 59} The commission counters that *AutoZone* is distinguishable from the present case because the claimant in *AutoZone* was working with restrictions when he was terminated by the employer, and there was no indication that the injured worker in *AutoZone* chose to no longer work or remove himself from the workforce entirely; to the contrary, the claimant in *AutoZone* had returned to work with restrictions, which continued after his termination from employment. Here, contends the commission, claimant's own treating provider offered restrictions and recommended vocational rehabilitation per the May 16 and 30, 2019, MEDCO-14s, and claimant did not return to work or attempt to return to work with restrictions.

{¶ 60} The commission's counterarguments are without merit. *AutoZone* guides the present case. In both *Autozone* and the present case, the injured workers were unemployed immediately preceding the period of disability that was caused by the industrial injury. Both workers then applied for TTD compensation because they were unable to work in any capacity after becoming disabled, a fact supported by the medical evidence in both cases. This court in *AutoZone* found the claimant's circumstances fit within the first sentence in R.C. 4123.56(F), because the claimant was unable to work as a direct result of his workplace injury after he underwent an allowed surgery. Here, claimant was unable to work as a direct result of his workplace injury after he was disabled by his allowed psychological conditions. The determination as to whether an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury under the first sentence in R.C. 4123.56(F) is made as of the date the period of TTD compensation is started. Whether claimant's treating provider offered restrictions and recommended vocational rehabilitation, and whether claimant did not return to work or attempt to return to work with restrictions, are irrelevant to whether he was unable to work as a result of his workplace injury. The present circumstances fall within the purview of the first sentence in R.C. 4123.56(F) because claimant was unable to work as a direct result of the allowed psychological conditions that were caused by his workplace injury.

{¶ 61} The commission further claims that claimant cannot meet the requirements of the second sentence in R.C. 4123.56(F). The commission argues that, under that

provision, when a claimant is not working at the time of the request for TTD compensation, the statute provides that an analysis is necessary to discern the reason the claimant is not working, and if the reason the claimant is not working is due to the allowed injury in the claim, then the claimant is eligible for TTD compensation; however, if the reason that a claimant is not working is due to reasons unrelated to the allowed injury, then the claimant is not eligible for TTD compensation. The commission contends that, in the present case, the SHO properly considered that claimant was not working on November 2, 2020, and appropriately found that it was as a direct result of reasons unrelated to the allowed psychological injury because claimant made the choice to not return to light-duty work after being found MMI even though he was medically capable of performing light-duty work.

{¶ 62} However, the commission's argument resembles the analysis used under the doctrine of voluntary unemployment, which was explicitly superseded by the amendment of R.C. 4123.56(F). It is clear from *AutoZone* that the simple fact that an injured worker was not working prior to the claimed period of TTD does not automatically disqualify a claimant from receiving TTD compensation, as the commission acknowledged in *AutoZone*. *AutoZone* at ¶ 30. In *AutoZone*, this court rejected the concept that an injured worker is not entitled to TTD compensation unless he is employed and actually suffered lost wages at the time of the claimed period of TTD. *Id.* at ¶ 32-33. Also with regard to the second sentence in R.C. 4123.56(F), in *AutoZone* we addressed the employer's argument that the magistrate erred when he found that a claimant's reasons for not working up to the date of his surgery were irrelevant. This court noted that the cases relied upon by the employer to challenge the magistrate's statement relied on the doctrine of voluntary abandonment. *Id.* at ¶ 34. We found that, "[a]lthough the employer implies we should analyze the effect of the termination and whether evidence exists that claimant had abandoned the workforce prior to his approved surgery, this is exactly the analysis the legislature expressly superseded by enacting R.C. 4123.56(F)." *Id.* We explained that, "[c]ontrary to the employer's position, R.C. 4213.56(F) requires us to review only whether the claimant in this case was unable to work as the direct result of an impairment arising from an injury or occupational disease to support the grant of TTD for the period specified." *Id.*

{¶ 63} This court in *AutoZone* then went on to summarize, as follows:

> Overall, we find the text of R.C. 4123.56(F) to be unambiguous. If a claimant is unable to work, R.C. 4123.56(F) sets forth two operative questions to be eligible for TTD compensation: (1) whether he or she is unable to work as the direct result of an impairment arising from an injury or occupational disease; and (2) whether he or she is otherwise qualified to receive TTD compensation. R.C. 4123.56(F) does not impose an additional requirement on a claimant to prove he or she is unable to work solely due to an impairment arising from an injury or occupational disease. Only when an otherwise qualified claimant is not working as a direct result of reasons unrelated to the allowed injury or occupational disease is the claimant ineligible to receive TTD compensation.
>
> Applied here, record evidence, namely the MEDCO-14 forms submitted by claimant's physician, demonstrated claimant was completely unable to work following the approved surgery necessitated by an impairment from a workplace injury. We find the evidence sufficient to satisfy the first sentence of R.C. 4123.56(F), showing claimant was unable to work as the direct result of an impairment arising from his workplace injury for the period at issue, and concomitantly sufficient to negate the second sentence of R.C. 4123.56(F), showing the reasons claimant is not working are not "unrelated" to the allowed injury. Therefore, because some evidence supports the commission's decision to grant TTD compensation in this case, we cannot disturb the order.

*Id.* at ¶ 35-36. Nowhere in the first paragraph above did this court indicate that the commission must look back to the time prior to the period of claimed TTD and determine why a claimant was not working. The court also did not undergo such an analysis in the second paragraph above to determine the claimant's eligibility for TTD. Instead, as this court explained, if a claimant is unable to work, R.C. 4123.56(F) sets forth only two operative questions to be eligible for TTD compensation: (1) whether he or she is unable to work as the direct result of an impairment arising from an injury or occupational disease; and (2) whether he or she is otherwise qualified to receive TTD compensation. There is no requirement that a claimant prove he or she is unable to work solely due to an impairment arising from an injury or occupational disease. In other words, although there may be other reasons why an employee is not working, as long as he or she is unable to

work as the direct result of an impairment arising from an injury or occupational disease, that is sufficient for TTD-compensation eligibility.

{¶ 64} As applied here, the MEDCO-14 form submitted by claimant's provider, Dr. Stoeckel, demonstrated claimant was completely unable to work due to the allowed psychological conditions from November 2, 2020, through April 6, 2022. Thus, there was uncontroverted evidence sufficient to satisfy the first sentence of R.C. 4123.56(F), showing claimant was unable to work as the direct result of an impairment arising from his workplace injury for the period at issue. Concomitantly, there was also evidence sufficient to negate the second sentence of R.C. 4123.56(F), showing the reasons claimant was not working after being disabled by his psychological disability are not "unrelated" to the allowed injury. Consistent with *AutoZone* at ¶ 63, the reason claimant was not working up until the date of psychological disability is irrelevant for purposes of determining his eligibility for wage-loss compensation. Even if it were assumed that claimant was not working prior to his period of psychological disability based on personal choice or other reasons, once claimant became disabled due to his allowed workplace injury, the reason he was not working at that point could no longer be directly attributable to reasons unrelated to the workplace injury. Instead, claimant's not working, at that point, was directly attributable to his allowed psychological conditions, which was necessitated by his allowed workplace injury. Similar to the claimant in *AutoZone*, in the present case, there is evidence in the record that claimant had been able to work, with restrictions, at the time of his disability, but the allowed psychological conditions completely removed claimant from the workforce per Dr. Stoeckel's MEDCO-14. Although claimant might have been able to work in some capacity prior to this time, it is undisputed that he was completely unable to work after it.

{¶ 65} Accordingly, it is the magistrate's decision that this court should grant claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.